UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| BILLI JO WOODS, on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | Civil No. 3:23-cv-00053-GFVT |
| Plaintiff, | ) ) | |
| v. | ) ) | **OPINION** |
| | ) | **&** |
| MORRIS MOHAWK GAMING GROUP, *et al.*, | ) ) ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court upon Plaintiff Billi Jo Woods's Motion for Alternative Service. [R. 6.] On August 8, 2023, Ms. Woods filed her Complaint against Defendants Morris Mohawk Gaming Group, Alwyn Morris, Calvin Ayre, and Harp Media BV. [R. 1.] Ms. Woods alleges that the Defendants operate online gaming websites, and that she and others similarly situated lost money wagering on Defendants' games of chance. *Id.* Accordingly, she seeks treble damages pursuant to Kentucky law. *Id.* Since filing her Complaint and being issued summonses, however, Ms. Woods contends that she has been unable to serve process upon the defendants through the generally prescribed means. She now asks that this Court permit her to alternatively serve, pursuant to Federal Rule of Civil Procedure 4(f)(3), Defendants Morris Mohawk Gaming Group, Alwyn Morris, and Harp Media BV. [R. 6.] For the reasons that follow, Ms. Woods's motion will be **DENIED**.

## I

According to Ms. Woods, Morris[1] is headquartered in Canada and Harp Media in Curaçao.  *Id*. at 6.  She avers that the Defendants have "thus far successfully evaded service in this matter."  *Id*.  Ms. Woods explains that her counsel, in compliance with Canadian law, has attempted process on the Morris defendants through a process server.  *Id*. at 6-7.  Although that service attempt was unsuccessful, she explains that Alwyn Morris's counsel has acknowledged Mr. Morris's awareness of this pendant action, but that Mr. Morris's counsel has refused to waive or accept service on behalf of his client.  *Id*. at 7.

Ms. Woods explains that, likewise, her counsel attempted informal service on Harp Media through a process server at Harp Media's listed address.  *Id*. at 6.  The process server was advised by Harp Media's former agent, however, that he is no longer Harp Media's registered agent.  *Id*.  Accordingly, Ms. Woods's counsel emailed the Complaint and Summonses in this action to the two contact emails listed for Harp Media BV on the Bovada.lv and Bovada.com websites.  *Id*.  She states that "Harp Media has repeatedly acknowledged receipt of the Summons and Complaint in this action but has ignored follow-up attempts to discuss the matter further."  *Id*.  Ms. Woods now seeks permission to serve Morris by emailing service to Morris's counsel, and to serve Harp Media by emailing service to Harp Media's dispute resolution address.  [R. 6 at 5.]

## II

Defendants Moris Mohawk Gaming Group and Harp Media are not individuals, but companies; thus, they must be served according to Fed. R. Civ. P. 4(h).  When that service is to

---

[1] Ms. Woods contends that Alwyn Morris is the founder, CEO, owner, and agent of Morris Mohawk Gaming Group. [R. 6 at 1.]  Accordingly, Mr. Morris and Morris Gaming will be referred to together as "Morris" or the "Morris Defendants."

occur outside of the United States, Rule 4(h)(2) permits service by any method permitted under Rule 4(f), with one exception irrelevant to this matter. Federal Rule of Civil Procedure 4(f) provides three methods of effectuating service on a foreign corporation: (1) by internationally agreed upon means, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (2) by a method that is reasonably calculated to give notice in the absence of an international agreement, or (3) by other means not prohibited by international agreement, as the Court orders. Fed. R. Civ. P. 4(f)(1)-(3).

The decision to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court. *Tallakoy, LP v. Black Fire Energy, Inc.*, Civ. No. 7:14-CV-180-KKC-EBA, 2018 U.S. Dist. LEXIS 237566 at *3 (E.D. Ky. Mar. 20, 2018). But "[e]ven if facially permitted by Rule 4(f)(3), the alternative method of serving process must also comport with constitutional notions of due process." *Id.* Complying with due process, in this context, requires that service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, Ms. Woods argues that, because reasonable efforts to serve the defendant have already been made to serve Morris and Harp Media, she be allowed to serve the Defendants via email pursuant to Rule 4(f)(3). As recognized by a sister court, "[t]he Sixth Circuit has not addressed the issue of whether there is a hierarchy or preference for the method of service under Rule 4(f)." *Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, 250 F. Supp. 3d 296, 306 (W.D. Ky. 2017). But while Rule 4 itself does not express a preference for service under a particular approach, the Advisory Committee's notes "recognize the mandatory nature of

using methods of service contained in the Hague Convention when it applies[.]"  *Noco Co. v. CF Grp. SZKMS Co.*, 571 F. Supp 3d 862, 867 (N.D. Ohio 2021).  The Advisory Committee's notes state:

> Paragraph (1) gives effect to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, which entered into force for the United States on February 10, 1969.  *See* 28 U.S.C.A., Fed. R. Civ. P. 4 (Supp. 1986).  This Convention is an important means of dealing with problems of service in a foreign country.  *See generally* 1 B. Ristau, International Judicial Assistance §§ 4-1-1 to 4-5-2 (1990).  Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service.  See *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988) (noting that voluntary use of these procedures may be desirable even when service could constitutionally be effected in another manner); J. Weis, *The Federal Rules and the Hague Conventions: Concerns of Conformity and Comity*, *50 U. Pitt. L. Rev.* 903 (1989). Therefore, this paragraph provides that, when service is to be effected outside a judicial district of the United States, the methods of service appropriate under an applicable treaty shall be employed if available and if the treaty so requires.

Fed. R. Civ. P. 4, advisory committee's note to 1993 amendments.  "Accordingly, under Rule 4, if the Hague Convention applies, a party must first attempt service by the means designated in the Convention.  *Liu Chang*, 2019 U.S. Dist. LEXIS 83085, 2019 WL 2135665, at *4-5.  If the Hague Service Convention applies, and use of its procedures is mandatory, a court may authorize alternative service under Rule 4(f)(3) only in special circumstances, such as if the foreign nation refuses to serve a complaint or fails to serve it within six months."  *Noco Co.*, 571 F. Supp. 3d at 868 (citing Fed. R. Civ. P. 4, advisory committee's note to 1993 amendments).  "[T]he only transmittal to which the [Hague] Convention applies is a transmittal abroad that is required as a necessary part of service."  *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 707.

## A

First, consider the Morris defendants.  Because both the United States and Canada are parties to the Hague Convention, service of process is governed by the convention.  "There are

several ways to accomplish service under the Hague Convention.  The primary method of service is for a party to mail process to the Central Authority, and the Central Authority then effects service on the individual or corporation according to local law." *Marcus Food Co. v. Dipanfilo*, Case No. 09-1261-EFM, 2010 U.S. Dist. LEXIS 107269 at *11 (D. Kan. Oct. 5, 2010), *aff'd*, 671 F.3d 1159 (10th Cir. 2011).  But multiple sister courts have found that utilizing a process server to personally effectuate service is valid under Article 10(b) of the Hague Convention.  *See e.g.*, *Marcus Food Co.*, 2010 U.S. Dist. LEXIS 107269 at *11; *Dimensional Communications, Inc. v. OZ Optics Limited*, 218 F. Supp. 2d 653 (D.N.J. 2002).  Thus, Ms. Woods's attempts to effectuate service upon Morris via a process server complied with the Hague Convention.

While directing Ms. Woods to continue attempting service via the methods prescribed by the Hague Convention might be appropriate, she argues that, given her attempt at personal service already, any other attempts pursuant to the Hague Convention would be futile.  As a factor in weighing whether to exercise its discretion and allow substituted service under Rule 4(f)(3), the Plaintiff must make a showing "that reasonable efforts to serve the defendant have already been made, and that the Court's intervention will avoid further burdensome or futile attempts at service." *Phoenix Process Equip. Co.*, 250 F. Supp. 3d at 306.  A Court may also require the Plaintiff to show "that the circumstances are such that the district court's intervention is necessary." *Noco Co.*, 571 F. Supp. 3d at 868.

Here, considering the record before it, the Court is not convinced that permitting alternative service is warranted.  Ms. Woods has provided evidence in the form of a sworn declaration by counsel that a process server attempted to serve the Morris defendants at the Kahnawake Office Complex in Quebec on August 25, 2023.  [*See* R. 6-1.]  The process server was informed by the business center in the building that, apparently, Morris Gaming had not

operated at that office complex for five years.  *Id*.  But this one failed attempt at serving Morris does not constitute circumstances where the Court's intervention is necessary.

Ms. Woods argues that, because Morris is already aware of the pendent litigation against him and his company, service via email should suffice to give Morris proper notice.  Given the record of Ms. Woods's counsel's correspondence with Morris's counsel, the Court does not doubt that Morris is in fact aware of the pendent litigation.  [*See* R. 6-2.]  While this particular evidence supports the argument that the requirements of due process would not be offended by permitting Ms. Woods to serve Morris via email, it falls short of persuading the Court that it should permit a circumvention of an international agreement.  Of course, any further attempts at serving Mr. Morris via methods prescribed by the Hauge Convention are more burdensome than simply sending an email.  But that want of ease is no excuse to set aside a preference set forth by the Advisory Committee for compliance with an international agreement.  Moreover, Ms. Woods has not shown that complying with Hague service would be futile.  She cites *Phoenix Process Equip. Co.* to argue that "the Court's intervention is the only way to avoid burdensome and time-consuming attempts at service . . . ."  [R. 6 at 11 (citing 250 F. Supp. 3d at 307).]  As just previously stated, however, Ms. Woods's one failed attempt at effectuating service in accordance with Hague is not enough to convince the Court that having another go is too cumbersome.  But more to the point, the district court in *Phoenix Process Equip. Co.* found that futility was almost certain to result where Russia's Central Authority refused to deliver any process sent to it by the plaintiff.  *See* 250 F. Supp. 3d at 306-07.  That is not the case here, where Ms. Woods's first and only attempt to serve Morris failed because Morris was no longer located at a particular business address.

The Court does not believe that Ms. Woods will be unnecessarily burdened by attempting to serve Morris, a Canadian defendant, in compliance with the Hague Convention. Thus, the Court will deny at this juncture the request to serve Morris via alternative service pursuant to Rule 4(f)(3).

**B**

Next, consider Harp Media. Curaçao is not a party to the Hague Convention. Because the Hague Convention does not apply, and the use of its procedures is not mandatory, the Court "may authorize service under Rule 4(f)(3) by any means not prohibited by international agreement, as long as the method comports with due process." *Noco Co.*, 571 F. Supp. 3d at 868. "The task of determining when the particularities and necessities of a given case require alternate service of process is placed squarely within the sound discretion of the district court." *Id*. (internal quotations omitted). Again, before exercising its discretion, the Court may require Plaintiffs to show that they have "reasonably attempted to effectuate service on the defendant, and that the circumstances are such that the district court's intervention is necessary." *Id.* (quotations omitted). "Further, even if the Hague Convention does not apply and other methods of obtaining service of process are technically allowed, principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant." *Id*. (internal quotations omitted).

Here, Ms. Woods provides evidence that her counsel has repeatedly contacted Bovada's customer service and "dispute resolution" emails in an attempt to serve Harp Media. [*See* R. 6-3.] Those efforts to serve Harp Media or to speak with an attorney representative have thus far proved fruitless. Ms. Woods argues that, because there is no international agreement in place

governing service between the United States and Curaçao, alternative service to Harp Media via email is allowed.  [R. 6 at 11.]

Again, however, the Court is unconvinced that exercising its discretion is warranted.  The Court's biggest concern regarding Harp Media is due process.  Ms. Woods's counsel declares that his process server attempted to informally serve Defendant Harp Media at its listed address in Curaçao, but that the process server was advised by Harp Media's former agent that they are no longer the Registered Agent for Harp Media BV.  [R. 6-1.]  After that one failed attempt, Ms. Woods's counsel emailed the two contact emails listed for Harp Media on the Bovada.lv and Bovada.com websites.  *Id*.  Those emails resulted in a four month long back and forth between Ms. Woods's attorney and Bovada's Customer Service that did not move the proverbial ball an inch.  [*See* R. 6-3.]  Ms. Woods argues that this correspondence with Bovada's Customer Service effectively put Harp Media on notice of the pendent litigation, and that Harp Media is ignoring attempts to discuss the matter further.  [R. 6 at 7; R. 6-1.]

Although no fault of Ms. Woods's counsel, the Court does not view this game of ping pong with Bovada's customer service to be a reasonable attempt to effectuate service.  But more importantly, the Court is in grave doubt that permitting alternative service to Harp Media via Bovada's dispute resolution email would satisfy the constitutional notions of due process.  To meet the due process requirement, service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  With the record currently before it, the Court cannot conclude with any confidence that service provided via email to Bovada's dispute resolution email would be "reasonably calculated to give notice" to Harp Media.  Although Ms. Woods evinces that the two

emails her counsel contacted are two contact emails listed for Harp Media on the Bovada.lv and Bovada.com websites, there is no evidence that these emails are even managed by individuals associated with Harp Media, much less individuals at all (as opposed to some sort of automated response or artificial intelligence).  The Court concludes, ultimately, that permitting Harp Media to be served by email would not comport with the requirements of due process.  Thus, the Court will deny too at this juncture the request to serve Harp Media via alternative service pursuant to Rule 4(f)(3).

**C**

Ms. Woods dedicates the last line of her motion to respectfully request attorneys' fees and costs incurred in connection with the motion.  She does not, however, mention upon which grounds attorneys' fees are warranted.  That being the case, and because the Court has otherwise denied Ms. Woods's requests for alternative service, the Court will deny her request for attorneys' fees.

**III**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Billi Jo Woods's Motion for Alternative Service [**R. 6**] and the concurrent Motion for Attorneys' Fees and Costs [**R. 6**] is **DENIED without prejudice**.

This the 25th day of July 2024.



Gregory F. Van Tatenhove
United States District Judge