UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| BILLI JO WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:23-cv-00053-GFVT |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| MORRIS MOHAWK GAMING GROUP, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff Billi Jo Woods's Renewed Motion for Alternative Service. [R. 27.]  Since the entry of this Court's July 17, 2024, Opinion and Order, Ms. Woods has attempted to serve Mr. Morris through the Central Authority of Canada, pursuant to the Hague Convention, without success. *Id*.  For the reasons that follow, Ms. Woods's Renewed Motion for Alternative Service [R. 27] is **GRANTED**.

I

On August 7, 2023, Ms. Woods filed her Complaint in this action, alleging that Defendants Morris Mohawk Gaming Group, Alwyn Morris, Calvin Ayre, and Harp Media BV operated the online casino websites under the brand name "Bovada" in contravention of Kentucky state law. [R. 1.]  Ms. Woods first attempted service upon Morris Mohawk Gaming Group and Mr. Morris ("the Morris Defendants") through a process server in compliance with Canadian law. [R. 27 at 2.] This initial attempt at service was unsuccessful.  Ms. Woods's counsel next attempted to address the service of process issues with Mr. Morris's Canadian counsel, but counsel refused to waive or accept service on behalf of his client. *Id*.

Ms. Woods then moved this Court to permit her to serve Morris by emailing service to Morris's counsel. [R. 6.]  On July 25, 2024, this Court entered an Opinion and Order denying Ms. Woods's Motion. [R. 18.]  The Court noted that, at that juncture, Ms. Woods had not attempted to serve Mr. Morris in compliance with the preferred method authorized by the Hague Convention – by and through the Central Authority of Canada. *Id*.

Ms. Woods's subsequent attempts to serve the Morris Defendants through the Central Authority of Canada have proven equally unsuccessful. [R. 27.]  Following the Court's denial of her Motion for Alternative Service, Ms. Woods employed the assistance of Ancillary Legal, a process server specializing in international service of process. [R. 21.]  After translation of the relevant documents into French – the primary language of the Canadian province of Quebec, where the Morris Defendants are located – Ms. Woods requested service of process through the Central Authority on October 11, 2024.  On March 12 and March 14, 2025, after attempting service on the Morris Defendants in accordance with the laws of Canada, as required by the Hague Convention, the Central Authority of Canada notified Ms. Woods that service was not effected on either defendant, and provided her with certificates of non-service. [R. 27 at 3.]  On April 24, 2025, Ms. Woods renewed her Motion for Alternative Service with this Court, seeking to serve process on Mr. Morris's Kentucky-based attorney under Fed. R. Civ. P. 4(f)(3).

II

A

Before evaluating the efficacy of effectuating substituted service via email, the Court must first determine whether permitting an alternative form of service of process is merited in this case.  This Court concludes that it is.

Federal Rule of Civil Procedure 4(f) provides three methods of effectuating service on a

2

foreign corporation: (1) by internationally agreed upon means, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) by a method that is reasonably calculated to give notice in the absence of an international agreement; or (3) by other means not prohibited by international agreement, as the Court orders. See Fed. R. Civ. P. 4(f)(1)-(3). Although much disagreement exists as to whether Rule 4(f) presents a hierarchy of preferred approaches to international service, we need not wade further into that debate here. Even where courts permit only a narrow application of service under Rule 4(f)(3), they acknowledge that alternative service is proper under special circumstances, are present, including "if the foreign nation … fails to serve [process] within six months." *Noco Co. v. CF Grp. SZKMS Co.*, 571 F. Supp. 3d 862, 868 (N.D. Ohio 2021). At minimum, the plaintiff must show "that reasonable efforts to serve the defendant have already been made, and that the Court's intervention will avoid further burdensome or futile attempts at service." *United States v. Alphatec Spine, Inc.*, 2016 WL 1182260, at *2 (S.D. Ohio Mar. 28, 2016).

In our July 2024 Order, this Court held that the Hague Convention applies to this matter and required Ms. Woods to pursue service in compliance with its provisions. [R. 18.] Specifically, as stated in the Order, the "primary method of service [under the Hague Convention] is for a party to mail process to the Central Authority, and the Central Authority then effects service on the individual or corporation according to local law." *Marcus Food Co. v. Dipanfile*, 2010 WL 3946314, at *11 (D. Kan. Oct. 5, 2010). We determined that although Hague service through Canada's Central Authority upon the Morris Defendants may be "more burdensome than simply sending an email," Ms. Woods had not sufficiently demonstrated that further Hague service efforts were futile. [R. 18 at 6.]

Now, more than a year later, the circumstances suggest otherwise. Pursuant to our Order,

3

Ms. Woods attempted to effectuate service upon the Morris Defendants according to the Hague Convention. [R. 27.] As this Court directed, Ms. Woods provided the requisite process upon the Central Authority of Canada, who provided it to a local official for service pursuant to Canadian law. Additionally, Ms. Woods also attempted service on the Morris Defendants using a process server which, as this Court acknowledged previously, is another valid method of service under Article 10(b) of the Hague Convention. See [R. 18, at 5.]; see e.g., *Dimensional Communications Inc. v. OZ Optics Ltd.*, 218 F. Supp. 2d 653 (D.N.J. 2002). Thus, at this point, Ms. Woods has attempted to service process upon the Morris Defendants using two methods permitted by the Hague Convention without success.

     Mr. Morris frames Ms. Woods's attempts at service as "half-hearted" and "anemic," and asserts that Ms. Woods needlessly waited several months following the entry of this Court's prior Order before seeking service under the Hague Convention. [R. 29 at 6-7.] Yet, Ms. Woods submits a rational justification for this delay – the need to translate the "entire service packet" into the French language, the primary language in the Canadian Province of Quebec where service was sought. [R. 31.] Upon completion of that translation, Ms. Woods avers that service through the Central Authority was promptly attempted.

     At this point in the litigation, the present status of this case presents "special circumstances," meriting the allowance of a form of alternative service pursuant to Rule 4(f)(3). Ms. Woods first attempted service upon the Morris Defendants using a process server, without success. Ms. Woods then attempted service through the Central Authority of Canada, pursuant to the prior Order of this Court, again without success. There appear to be no additional remaining viable methods to effectuate service under the Hague Convention, and continued efforts to serve the Morris Defendants would be both "burdensome" and "futile."

4

B

An analysis under Rule 4(f)(3) "empowers the court with flexibility and discretion to fit the manner of service to the facts and circumstances of the particular case." *Federal Trade Commission v. Repair All PC, LLC*, 2017 WL 2362946, at *3 (N.D. Ohio May 31, 2017).  Since this Court has determined that alternative service under Rule 4(f)(3) is proper at this time, we must now turn to whether the plaintiff's suggested method – email service upon the Morris Defendants' Kentucky-based counsel – is permitted.  Courts have outlined a two-part analysis to determine whether a given method of substituted service is proper.  *Phoenix Process Equip. Co.*, 250 F. Supp.3d 296 at 307. First, the Court must determine whether the proposed method of service comports with relevant provisions of international agreements. *Id*.  If so, the Court must determine whether the proposed method service comports with constitutional due process. *Id*. at 308.  If both requirements are satisfied, the Court may, at its discretion, permit substituted service.

1

Even where Rule 4(f) permits an alternative method of service, the method authorized "must not be prohibited by international agreement."  Where, as here, the foreign country in which the plaintiff is seeking to effectuate service is a party to the Hague Convention, the Court must determine whether the proposed method is authorized by the Convention's substantive provisions.

The purpose of the Hague Convention is to ensure that "foreign defendants receive actual and timely notice of suit," and "to supply a simple way to serve process abroad." *Noco Company, Inc. v. Zhejiang Quingyou Electronic Commerce Co., Ltd.*, 338 F.R.D. 100, 103-04 (N.D. Ohio 2021) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698

(1988)). However, the scope of the Hague Convention is not exceedingly broad. Rather, "the only transmittal to which [it] applies is a transmittal abroad thar is required as a necessary part of service." *Id*. at 707. Courts have "agreed that service by email is not prohibited by the Hague Convention." *Lexmark Intern., Inc. v. Ink Technologies Printer Supplies, LLC*, 291 F.R.D. 172, 174-75 (S.D. Ohio 2013) (citing *Williams-Sonoma Inc. v. Friendfinder, Inc.*, 2007 U.S. Dist. LEXIS 31299, at *4-5 (N.D. Cal. Apr. 17, 2007); see also *Facebook, Inc. v. Banana Ads, LLC*, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012) (citing cases).

Therefore, the method of alternative service sought by Ms. Woods – substitute service via both personal service and email service – is not a method of service prohibited by the Hague Convention. Consequently, because it does not violate the Hague Convention, it is permissible under Rule 4(f)(3), so long as it also comports with due process.

2

In order for a method of service to comport with constitutional due process, it must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Courts addressing this issue "have made attorneys …agents for the sole purpose of receiving service," regardless of the existence of express authority. *Phoenix Process Equip. Co.*, 250 F. Supp.3d 296 at 308; see, e.g., *Calista Enterprises Ltd. v. Tenza Trading Ltd.*, 40 F. Supp. 3d 1371, 1375-76 (D. Ore. 2014) (allowing service on domestic counsel for defendants located in Russia and the Czech Republic); see e.g., *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011) (allowing service on domestic counsel for defendants located in India); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534-35 (E.D. Va. 2005) (allowing service on domestic

6

counsel for defendants located in Pakistan).

We need not belabor this analysis; it is clear that effectuating service upon Mr. Morris's Kentucky-based attorney will apprise him that an action is pending and will allow him an opportunity to present objections. In fact, this has already occurred. Subsequent to the filing of the complaint, Mr. Morris retained Kentucky-based counsel, distinct from his Canadian-based counsel. By and through this Kentucky-based counsel, Mr. Morris has filed a Response to this Motion for Alternative Service [R. 29] and has entered a special appearance to file a Motion to Dismiss this case for lack of personal jurisdiction and insufficient service of process. [R. 24.] Thus, this Court need not speculate as to whether email service upon a Kentucky-based counsel will apprise Mr. Morris of the "pendency of the action," – he is already so aware and has already raised jurisdictional objections in a separate motion.

The Morris Defendants are correct in stating that "Mr. Morris's actual knowledge of this lawsuit cannot support a finding that Woods has satisfied Rule 4." [R. 29 at 1.] This Court does not find that Mr. Morris's actual knowledge of the pendency of the case is enough, in and of itself, to declare that he has been properly served under Rule 4. Rather, this Court merely holds that effectuating substituted service upon a defendant by serving their retained counsel in the forum state is, under these circumstances, sufficient to satisfy due process under the *Mullane* standard. See e.g., *Rio Properties Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (holding that service upon the defendant's U.S.-based attorney was proper because the attorney had been consulted by the defendant regarding the present lawsuit). Put another way, actual knowledge does not constitute service of process. But effectuating substituted service upon Mr. Morris's in-state counsel, retained for the purpose of defending this action, is proper under both the Rules of Civil Procedure and the Constitution.

7

III

Because the proposed method of substituted service comports with the requirements of the Hague Convention, the Federal Rules of Civil Procedure, and due process, the motion for substituted service is **GRANTED**. Ms. Woods is permitted to serve Mr. Morris's Kentucky-based attorney, Sarah D. Reddick at Dinsmore & Shohl, LLP, by serving her at her business address and email address on file with this Court. Ms. Woods shall have **thirty (30) days** from the entry of this order to serve process upon Mr. Morris via his Kentucky-based attorney.

This 7th day of November, 2025.

Gregory F. Van Tatenhove
United States District Judge