UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| BILLI JO WOODS ) | |
| ) | |
| Plaintiff, ) | Civil No. 3:23-cv-00053-GFVT |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| MORRIS MOHAWK GAMING GROUP, *et* ) | **& ORDER** |
| *al*., ) | |
| ) | |
| Defendants. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on a Motion to Dismiss filed by Defendant Alwyn Morris in a special appearance. [R. 24.]  In Mr. Morris's view, this Court lacks personal jurisdiction over him and he also seeks dismissal on the basis of insufficient service of process.  For the reasons that follow, Mr. Morris's Motion to Dismiss [R. 24] is **DENIED**.

I

Mr. Morris is the founder, CEO, and owner of Morris Mohawk Gaming Group, a private company organized under the laws of Canada.[1] [R. 1]  Mr. Morris currently resides in Quebec, Canada. *Id*. at 3.  According to Ms. Woods' complaint, Mr. Morris owns and operates, through his company, the popular online casino websites, www.bovada.com and www.bodava.lv ("the

---

[1] A factual dispute exists regarding the status of Morris Mohawk Gaming Group.  In his Motion to Dismiss, Mr. Morris insists that Morris Mohawk "does not appear to exist, nor has it ever existed." [R. at 1, n.1.]  This assertion contradicts, however, with statements made by Mr. Morris in sworn declarations submitted to the Court by Ms. Woods alongside her Renewed Motion for Alternative Service. [R. 27-3 at 2.] ("This transaction completed in 2007 after I established the Morris Mohawk Gaming Group").  Thus, while the current legal status of Morris Mohawk Gaming Group remains unclear, its present legal status is not material to the determination of this Court's *in personam* jurisdiction with respect to Defendant Morris, as we construe all jurisdictional facts in the light most favorable to the Plaintiff.

Bovada websites").[2] *Id*. at 4.  These websites operate as part of a larger network of online gaming sites – known as the "Bodog Network," which Ms. Woods avers is owned and operated by Defendant Calvin Ayre and headquartered in Antigua and Barbuda. *Id*. at 3.  Users who visited the Bodog Network website from Kentucky were redirected to the Bovada websites, where they could engage in online gaming.  The Bovada websites allow the user to deposit money and participate in an array of interactive casino games, including games involving a live dealer. *Id*. at 4-7.  Casino games of this sort are illegal under Kentucky law.  See e.g., KRS Chapter 528.

On August 8, 2023, Ms. Woods filed a Complaint against Defendants Morris Mohawk Gaming Group, Alwyn Morris, Calvin Ayre, and Harp Media BV. [R. 1.]  Ms. Woods alleges in her Complaint that the Defendants operate online gaming websites, and that she and others lost money wagering on Defendants' games of chance. *Id*.  Specifically, Ms. Woods alleges that the Defendants' alleged conduct violates KRS § 372.010. *Id*. at 9-10.  In the more than two years which have transpired since this Complaint was filed, Ms. Woods has been unable to serve process upon any of the four defendants. See [R. 24.]  Now, appearing specially, Mr. Morris seeks dismissal of this action for lack of personal jurisdiction under Rule 12(b)(5) and for insufficient service of process under Rule 12(b)(2).

II

A

The decision as to whether a forum has jurisdiction over a particular defendant "is not an idle or perfunctory inquiry; due process demands that parties have sufficient contacts with the

---

[2] Mr. Morris contests this jurisdictional fact.  He states that he sold the "Bovada brand and website" to "a Curacao company" and that he "surrendered the gaming licenses issued to Bovada by the Kahnawake Gaming Commission. On the other hand, Mr. Morris states that he "remain[s] the brand licensee for Bodog gaming worldwide." [R. 27-3 at 2.]

2

forum state so that it is fair to subject them to jurisdiction." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Federal courts may not exercise personal jurisdiction over a particular defendant "unless courts of the forum state would be authorized to do so by state law," and if such jurisdiction also comports with the due process requirements of the U.S. Constitution. *Id*. (quoting *Int'l Techs. Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997)). While personal jurisdiction can exist in the form of either general or specific personal jurisdiction, both parties agree that Mr. Morris, a Canadian citizen, is not subject to general personal jurisdiction in Kentucky. Thus, if personal jurisdiction exists, it must be by virtue of specific personal jurisdiction.

In general, the party seeking to assert *in personam* jurisdiction over a specific defendant bears the burden of showing that proper jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Yet, where a district court rules on a motion to dismiss brought under Rule 12(b)(2) for lack of personal jurisdiction, the court "must consider the pleadings and affidavits in a light most favorable to the plaintiff." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). The court "does not weigh the controverting assertions of the party seeking dismissal," in order to "prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen* at 1459. Thus, dismissal is proper only "if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction."

1

Before reaching the due process analysis, this Court must first determine whether Mr. Morris's activities fall within the scope of KRS § 454.210 (the Kentucky "Long-Arm Statute"). On July 15, 2024, the Kentucky General Assembly substantially amended its Long-Arm Statute.

3

which now provides that "a court may exercise personal jurisdiction over a person who is a party to a civil action on any basis consistent with the Constitution of Kentucky and the Constitution of the United States." KRS § 454.210.  In other words, the scope of the amended Long-Arm Statute is co-extensive with the Constitutional due process analysis. *Premier Packaging, LLC v. Sticky Fingers Sweets & Eats, Inc.*, 2025 WL 359324, at *3 (W.D. Ky. Jan. 31, 2025) ("the statute has become a due process long-arm").  This is in contrast to the prior version of the Long-Arm Statute, which provided an "exhaustive list of bases for exercising personal jurisdiction over out-of-state defendants." *Mayfield Consumer Prods. LLC v. Int'l Grp.*, 2025 WL 714459, at *2 (W.D. Ky. Mar. 5, 2025) (citations omitted).  The amendment, however,  "does not appear to be retroactive. After all, it doesn't say that it is." *Bell v. Kokosing Indus., Inc.*, 2024 WL 3549581, at *5 (6th Cir. July 26, 2024).  Thus, "[the Court] appl[ies] the long-arm statute that was in effect at the time of filing." *Id*.  Because Ms. Woods' complaint was filed in 2023, well before the amendments to the Long-Arm Statute were enacted, this Court must determine whether Mr. Morris's activities fall within the pre-amendment version of KRS § 454.210.

Prior to the enactment of the amendments, the Kentucky Supreme Court rejected the notion that the long-arm statute was "*per se* co-extensive with the limits of federal due process." *Tew v. MCML Ltd.*, 751 F. Supp.3d 733, 746 (citing *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 55, 57 (Ky. 2011)).  Thus, the determination of whether the defendant's activities are within the long-arm statute requires an independent analysis, separate and distinct from the due process inquiry. *Caesars Riverboat Casino*, 336 S.W.3d at 57.

Additionally, the determination of whether the long-arm statute extends jurisdiction over an out-of-state defendant is itself a two-part analysis.  First, the Court must determine whether the defendant's conduct falls within any of nine "particular instances of conduct upon which

4

personal jurisdiction over a nonresident may be predicated." The analysis does not end there, however. Next, the plaintiff must also show that the cause of action "arises from" the defendant's conduct within the forum state.

Here, Ms. Woods alleges that Mr. Morris's conduct falls within the scope of three of the enumerated provisions of the long-arm statute. First, Ms. Woods contends that Mr. Morris "transacted any business" within Kentucky as defined in KRS § 454.210(2)(a)(1). Specifically, Ms. Woods contends that Morris "transacted any business" in Kentucky by "accept[ing] registration and funds from Kentucky customers, provid[ing] services to Kentucky customers in the form of live table games and other casino games, and accept[ing] online payments … to customers in Kentucky." Mr. Morris, on the other hand, argues that he has not conducted any business activities targeting Kentucky, and disputes whether he was involved in the operation of the online casino at all at the time the claim accrued. [R. 30 at 7.] ("Morris surrendered the gaming licenses issued to Bovada and sold both he Bovada brand and websites in 2017")[3]. Further, Morris argues that mere online advertisement that can be viewed by Kentuckians is insufficient to qualify as "transacting any business" within the Commonwealth. See *Auto Channel, Inc. v. Speedvision Network LLC*, 995 F. Supp. 761, 765 (W.D. Ky. 1997) ("the fact that Internet users in Kentucky can view advertisements on web pages … falls far short of demonstrating that Defendants advertise in Kentucky").

---

[3] Again, the legal status of Morris Mohawk Gaming Group, the Bovada websites, and the scope of Mr. Morris's involvement remains shrouded in opacity. While on the one hand, Mr. Morris claims to have closed Morris Mohawk Gaming Group, he asserted in a sworn declaration to Ms. Woods's counsel that "he remains the brand licensee for Bodog gaming worldwide." This sworn statement also contradicts with his assertion that he "has had zero involvement with the Bovada website since 2017." And, while it is uncontroverted that Harp Media BV possesses an ownership interest in the Bovada websites, the scope of Mr. Morris's duties as "brand licensee of the Bodog network" remain unclear. At this stage, however, we must evaluate the Motion to Dismiss in view of the Plaintiff's construction of the jurisdictional facts.

Construing the facts presented in the light most favorable to the party opposing dismissal, it is clear that Mr. Morris "transacted business" in Kentucky within the meaning of KRS 454.210(2)(a)(1). Courts have made clear that the "transacting any business" prong of the Kentucky long-arm statute presents an exceedingly low bar for establishing jurisdiction. *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504-05 (6th Cir. 2014) ("use of the word 'any' … establishes that even the slightest transaction is sufficient to bring a corporation within [the forum's] long-arm jurisdiction"); see also *Hall v. Rag-O-Rama, LLC*, 359 F. Supp.3d 499, 506 (E.D. Ky. 2019) (applying the standard). While mere passive advertisements accessible by Kentuckians, absent more, may be insufficient to qualify as "transacting business," Mr. Morris's activities go well beyond passive advertisement. Regardless of whether the Bovada websites actively targeted Kentucky residents through advertising initiatives, the Defendants allowed Kentuckians to register on the website, allowed Kentuckians to make deposits, and engaged virtually with Kentucky residents through live interactive casino games. This constituted transacting business in Kentucky, and Ms. Woods's claims arise directly from these actions.

Ms. Woods also asserts that Mr. Morris's activities fall within the scope of KRS § 454.210(2)(a)(4), which provides for personal jurisdiction where a defendant:

> [c]aused tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth.

Thus, in order to be subject to personal jurisdiction under § 454.210(2)(a)(4), a defendant must (1) have caused a tortious injury in Kentucky, that (2) arises out of defendants' activities in

6

conducting business, soliciting business, or deriving substantial revenue from business in Kentucky, (3) provided that the conducting, soliciting, or deriving substantial revenue is persistent." *Eat More Wings, LLC v. Home Market Foods, Inc.*, 282 F. Supp.3d 965, 970 (E.D. Ky. 2017) (citing *Fin. Ventures v. King*, 131 F. Supp.3d 677, 685-86 (W.D. Ky. 2015).

The activities of Defendant Morris clearly fall within the scope of 454.210(2)(a)(4). As outlined in Ms. Woods' complaint, Morris and the Bovada websites inflicted tortious injury upon Ms. Woods, and those similarly situated, by operating a gambling enterprise and actively engaging in online casino games with Kentuckians. These Kentuckians allege a prima facie injury in the form of financial loss, in violation of Kentucky law, resulting in "thousands of dollars" flowing to the benefit of the owners and operators of the Bovada websites, including Mr. Morris, its brand licensee. And these activities were persistent. Rather than one-off gambling experiences, users seeking to participate in gambling on the Bovada websites created accounts and deposited funds to participate. Ms. Woods, who seeks to bring this case in the form of a class action, avers that many other Kentuckians faced the same or similar experiences. Viewed in totality, these circumstances are more than sufficient to qualify as an "enumerated activity" under KRS § 424.210(2)(a)(4) as well.

Lastly, it is clear that Mr. Morris's activities within Kentucky "arise from" Ms. Woods's cause of action. This distinct "arising from" requirement is satisfied "if there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction." *Muncy v. InterCloud Systems, Inc.*, 92 F. Supp.3d 621, 633 (E.D. Ky. 2015) (citing *Caesars Riverboat Casino*, 336 S.W.3d at 58-59). Stated differently, jurisdiction under the long-arm statute is proper "if the causes of action involved were made possible by or lie in the wake of a defendant's conducts." *Santa Escolastica, Inc. v. Pavlovsky*, 736 F. Supp.2d

7

1077, 1086 (E.D. Ky. 2010).  Ms. Woods's complaint, seeking damages stemming from gambling losses, undeniably lie in the wake of Mr. Morris's activities in directing and operating online gambling enterprises in Kentucky.  These are precisely the activities – opening and maintaining accounts for Kentucky residents, receiving Kentuckians' funds, and engaging with Kentuckians in live online casino gambling – which established the statutory predicate for long-arm jurisdiction under either 424.210(2)(a)(1) or (2)(a)(4).  And Ms. Woods, and those similarly situated, who suffered financial loss as a result of participating in these online casino games, "lie in the wake" of the Defendants' conduct.

Consequently, the activities undertaken by Mr. Morris, by and through the Bodog Network and the Bovada Websites, are sufficient to bring him within the scope of Kentucky's long-arm statute and thus satisfy this first portion of our jurisdictional analysis.

2

Next, we must independently address whether Mr. Morris's activities are sufficient to meet the due process requirements of the Fifth and Fourteenth Amendments to the U.S. Constitution.  At the core of the analysis, courts must ensure that the exercise of justice does not offend "traditional notions of fair play and substantial justice," by determining whether the defendant has sufficient contacts with the forum state.  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Courts in the Sixth Circuit apply a three-part test in making the determination of whether the exercise of personal jurisdiction over a particular defendant comports with due process. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016).  First, the defendant "must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Id*. (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).

Next, the court must determine whether the claim "arise[s] out of or relate[s] to the defendant's contacts' with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017)). Finally, the Court must determine whether the defendant's acts "have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *AlixPartners*, 836 F.3d at 549-50 (quoting *Air Prods.*, 503 F.3d at 550).

a

First, this Court must determine whether Mr. Morris, through his activities with respect to the Bovada websites, purposefully availed himself of the "privilege of conducting activities within" the forum state – Kentucky. *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 671 (6th Cir. 2023). The contacts must be voluntary in nature, and not "random, isolated, or fortuitous." *Ford*, 141 S. Ct. at 1024-25 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This analysis requires showing that the defendant "exploit[ed] a market" in Kentucky or "entered a contractual relationship centered there." *Id.* at 1025 (quoting *Walden v. Fiore*, 571 U.S. 277 (2014)). The talisman of the inquiry focuses on the "quality of the contacts," as opposed to "their number or status." *CompuServe*, 89 F.3d 1257 at 1265 (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994)). The purposeful availment requirement ensures "random," "fortuitous," or "attenuated" contacts do not give rise to federal court jurisdiction. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The purposeful availment requirement does not require, however, that the defendant by "physically present" within the forum state. *Id.* at 1264. Rather, the purposeful availment prong is satisfied where the defendant "purposefully direct[s]" activities toward residents of the forum state. *Burger King Corp.*, 471 U.S. at 476; see also *Southern Mach. Co. v. Mohasco Indus.*, 401

F.2d 374, 382 (6th Cir. 1968) ("Physical presence of an agent is not necessary"). "The operation of an Internet website" can satisfy the purposeful availment analysis where, "the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). Courts evaluating the nature of online casino websites have overwhelmingly observed that they are highly interactive marketplaces of chance that operate continuously and profit directly from repeated user engagement. See e.g., *Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.com*, 128 F. Supp.2d 340, 350 (E.D. Va. 2001) (finding personal jurisdiction because "online casino gambling – is an inherently interactive activity"); *Uebler v. Boss Media, AB*, 363 F. Supp.2d 499, 506 (E.D.N.Y. 2005) ("[T]he Oriental Casino is a highly interactive website because its primary function is to allow the customer to gamble over the internet"); *Wilson v. PTT, LLC*, 351 F. Supp.3d 1325, 1335 (W.D. Wash. 2018) (finding personal jurisdiction because online gambling casino app "facilitated ongoing economic activity between users and the app developer").

This Court's prior decision in *Tempur Sealy International, Inc. v. Wondergel, LLC*, is particularly instructive. 2016 WL 1305155, at *2 (E.D. Ky. Apr. 1, 2016). In *Wondergel*, the defendant Purple, a company engaged in the manufacture and sale of mattresses, operated a website through which "consumers in all fifty states may purchase Purple's products." *Id*. The Court, in holding that Purple had purposefully availed itself of acting in Kentucky, noted that Kentucky website users could "engage in online chat with Purple's representatives; sign up for Purple's email list; locate Purple's customer service number; contact Purple via email; and register and save their information on the website." *Id*. Although the Court acknowledged that Purple did not "actually served [sic] customers in Kentucky," the plaintiff needed only make "a

10

prima facie showing of jurisdiction at this point [of litigation]." *Id.*; see also *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) ("The plaintiff bears the burden of making a prima facie showing of the court's personal jurisdiction"). Purple's actions, therefore, were deemed sufficient to constitute purposeful availment.

The activities undertaken by Mr. Morris and the Bovada websites are strikingly similar, if not more extensive, to those present in *Wondergel*. The Bovada websites allow Kentuckians to "register and deposit money," which they "may then gamble and wager with the deposited money through interactive casino games on the Websites." [R. 28 at 11.] Importantly here, users can engage in "live dealer games." *Id.* Mr. Morris contends that purposeful availment cannot arise merely from the fact that "Kentuckians may have accessed the website." [R. 24 at 5.] This may be true, but the degree of engagement users experienced upon visiting the Bovada websites goes well beyond mere "access." Again, once users accessed the Bovada websites, they were permitted to open an account, deposit funds, and engage in games involving a live dealer.

This is more than a passive engagement; it is a business transaction involving mutual engagement on the part of both the website user and the operators of the Bovada websites. Taken together, Defendants' activities demonstrate, at minimum, a voluntary, intentional, and interactive engagement with the forum state sufficient to make a prima facie showing of purposeful availment.

b

Next, the Court must address whether the Plaintiff's claim "arises out of" the Defendant's activities in the forum state. This requirement is "lenient." *Hall*, 359 F. Supp.3d at 512. It requires only "that the cause of action … have a substantial connection with the defendant's in-state activities." *Tew*, 751 F. Supp.3d 733 at 748 (quoting *Mohasco*, 401 F.2d at 384 n.27).

11

This prong is easily satisfied here. It is abundantly clear that the activities of the Bovada websites – operating online, interactive casino gaming websites – are "substantial[ly] connect[ed]" to Ms. Woods cause of action – seeking damages stemming from gambling losses under Kentucky state law. Mr. Morris argues, in effect, that because he did have "specific contacts" with Kentucky, there is nothing from which Ms. Woods's cause of action can "arise out of ." Mr. Morris's argument, which blurs the line between the purposeful availment and "arise out of" analyses, is unpersuasive. For the reasons already discussed, Mr. Morris and the Bovada websites maintained intentional activities – albeit virtually – within Kentucky, and the Plaintiff's cause of action is substantially, if not intrinsically, connected with these activities. Therefore, the "arises out of prong" is easily satisfied.

c

Third, and finally, we must determine whether this Court's exercise of personal jurisdiction over Mr. Morris is reasonable. Generally speaking, where a defendant has purposefully availed himself of the "'privilege of conducting business' in the forum state … it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum." *Sullivan*, 79 F.4th 651 at 674 (quoting *Burger King Corp.*, 471 U.S. at 476). Courts in the Sixth Circuit have stated that where the first two prongs of the personal jurisdiction are satisfied, "an inference arises that this third factor is also present." *CompuServe*, 89 F.3d at 1268. In evaluating whether the inference has been overcome by the party seeking dismissal, court evaluate several factors including, "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id*. (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169-70 (6th Cir. 1988)).

An analysis of each of these factors points to a conclusion that the exercise of jurisdiction over Mr. Morris is reasonable. Mr. Morris claims that requiring him to defend a case in Kentucky "imposes a significant burden." [R. 24 at 10.] Specifically, he avers that he "has personal and professional commitments that would preclude him travelling internationally to attend this matter in person," as well a "financial burden." *Id*. at 10-11. Additionally, he posits that "travelling between Canada and the United States at this time is not as simple as it once was," and consequently, he "may face heightened scrutiny at the border if he must travel to Kentucky." *Id*. at 11. Lastly, he asserts that litigating against a class of defendant composed of only Kentuckians may result in "expensive and complicated" class discovery across borders. *Id*.

Even assuming each of these averments are true, they do not place a burden so high as to offend "the traditional notions of fair play and substantial justice." With respect to the international travel considerations, the Sixth Circuit has held requiring a Canadian resident to litigate a case in Kentucky is "not overly burdensome." *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998). And while the defendant in *Aristech* resided in Ontario, Mr. Morris's residence in the Province of Quebec, which neighbors Ontario to the east, is not a material distinction. As in *Aristech*, "only a short plane flight," separates Quebec from central Kentucky. Likewise, Mr. Morris's argument that litigating the case in Kentucky would be inconvenient, in view of his personal and professional commitments, is equally unavailing. Nor does he present any evidence to suggest why or how conducting fact discovery would be substantially more "expensive and complicated," such that exercising jurisdiction over him would be unreasonable.

Likewise, the remaining factors equally point toward a reasonable exercise of jurisdiction. Mr. Morris posits that Kentucky's interest in addressing Bovada's alleged

13

violations of law are no greater than any other state. [R. 24 at 11.] While this may be true in the abstract, in view of Bovada's operations writ large, Kentucky certainly has an elevated interest in addressing an alleged harm brought upon its own citizens. See e.g., *Mohasco*, 401 F.2d at 385 ("[W]hen the contract is with a resident of [the forum state], the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted"); see also *Mayfield Consumer Prods.*, 2025 WL 714459, at *6 (W.D. Ky. Mar. 5, 2025) ("Kentucky 'has a strong interest in providing a forum for lawsuits relating to their residents' injuries"). Additionally, Mr. Morris asserts that even if he were to be dismissed from the matter, Ms. Woods and the other potential class members will be left with the ability to seek redress from the remaining co-defendants. [R. 24 at 11.] However, more than two years into this litigation, none of the four named parties have been served, and only Mr. Morris has entered a special appearance to contest this Court's jurisdiction. Consequently, it cannot be said with any certainty that dismissing Mr. Morris will leave Ms. Woods and those similarly situated with a viable remedy.

B

Mr. Morris also seeks dismissal of this case for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5). Our analysis in evaluating a Rule 12(b)(5) motion is directed by Fed. R. Civ. P. 4(m). *O'Brien v. Children's Home of Northern Kentucky*, 2025 WL 645870, at *2-3 (E.D. Ky. Feb. 26, 2025). Generally, under Rule 4(m), "if a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). But, "if the plaintiff shows good cause for the failure, the court *must* extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m) (emphasis added). Thus, the Court must first "determine whether the plaintiff has shown good cause for the

14

failure to effect service." *Stewart v. Tenn. Valley Authority*, 238 F.3d 424 (6th Cir. 2000). If good cause exists, the court is required to extend the permitted time for service of process. *O'Brien*, 2025 WL 645870, at *3 (citing *Stewart*, 238 F.3d at 424). The Sixth Circuit has defined good cause to require "a reasonable, diligent effort to timely effect service of process." *Johnson v. Smith*, 835 F. App'x 114, 115 (6th Cir. 2021). The gravamen of the determination of good cause is whether "something outside the plaintiff's control prevents timely service." *Thul v. Haaland*, 2023 WL 6470733, at *2 (6th Cir. Mar. 1, 2023), cert. denied, 144 S. Ct. 96 (2023).

Yet, even if good cause is not present, the Court "retains discretion as to whether or not to enlarge that timeframe." *United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 569 (6th Cir. 2022) (listing seven factors to consider when determining whether to grant a discretionary extension of the time to effectuate service of process, absent good cause).

Here, we need not elaborate further as to this Court's discretion, because Ms. Woods has demonstrated good cause. Thus, this Court is required to grant an extension of time under Rule 4(m) and deny motion to dismiss under Rule 12(b)(5). This is not the first time this Court has addressed the challenges associated with effectuating service of process in this case. On July 25, 2024, this Court entered an order denying Ms. Woods's Motion for Alternative Service, and ordering her to effectuate service of process upon Mr. Morris pursuant to the Hague Convention. [R. 18.] When employing Hague Service, a party must generally allow for a six-month time period for the Central Authority to effectuate service before moving for alternative service under Rule 4(f)(3). *C & F Systems, LLC v. Limpimax, S.A.*, 2010 WL 65200, at *2 (W.D. Mich. Jan. 6, 2010) (citing 4B Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1133 at 313 (3d ed. 2002)).

15

Ms. Woods attempted service upon Mr. Morris and Morris Mohawk Gaming Group pursuant to the Hague Convention, pursuant to this Court's prior Order. [R. 28 at 17-18; R. 27.] Despite serving process upon the Central Authority of Canada, as required by the Hague Convention, Mr. Morris has still yet to be served after more than six months have elapsed. [R. 28 at 18.] This failure to effectuate service, therefore, can hardly be said to be the fault of Ms. Woods. In fact, Ms. Woods has renewed her Motion for Alternative Service, and that motion is concurrently pending before this Court. [R. 27.] Thus, it is clear that Ms. Woods has undertaken "a reasonable, diligent effort to timely effect service of process," to establish good cause.

In view of Ms. Woods's efforts to comply with Hague service, in accordance with this Court's July 25, 2024, opinion and order, good cause exists to seek an extension of the time to effectuate service. This is compounded by the fact that service of process issues remain ongoing, and a Motion is pending seeking alternative service pursuant to Rule 4(f)(3). The Court must, therefore, permit an extension of time for Ms. Woods to effectuate service of process. As a result, dismissing the case for insufficient service of process at this juncture would be both improper and premature. See e.g., *Chapman v. Teamsters Local 853*, 2007 WL 3231736, at *3 (N.D. Cal. Oct. 30, 2007) ("[d]ismissal is not appropriate when there is a reasonable prospect that service may yet to be obtained").

III

For the reasons set forth above, it is hereby **ORDERED** that Mr. Morris's Motion to Dismiss for lack of personal jurisdiction and insufficient service of process, pursuant to Rules 12(b)(2) and 12(b)(5), is **DENIED**.

This 2nd day of December 2025

Gregory F. Van Tatenhove
United States District Judge